Date signed September 09, 2011



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Hector Antonio Araujo, | * | Case No. 09-33600-WIL |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |
| ****************************************** | | |
| | * | |
| Fru-Con Construction Corp., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Adversary No. 10-00150 |
| | * | |
| Hector Antonio Araujo, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

**************************************************************************

## MEMORANDUM OPINION

Before the Court is the Plaintiff's "Amended Complaint Objecting to Discharge of Debtor" (the "Amended Complaint") and the Debtor's Answer thereto. The Court held a trial on March 7, 2011, and this matter was taken under advisement. For the following reasons, the Court finds in favor of the Plaintiff and the Debtor shall be denied a discharge.

As is often opined by Courts, one of the central purposes of the Bankruptcy Code and the

privilege of discharge is to allow the "honest but unfortunate debtor" the opportunity to begin a new life free from debt. *D.A.N. Joint Venture v. Cacioli (In re Cacioli),* 463 F.3d 229, 234 (2d Cir. 2006)(*quoting Grogan v. Garner,* 498 U.S. 279, 286-87 (1991)). On the other hand, "'the very purpose of certain sections of the law, like [§ 727(a)(2) ], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997)(*quoting Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)). In this case, the Court has considered the pleadings filed by the parties, the oral arguments made by counsel, the Debtor's testimony at trial, and the exhibits admitted into evidence. Taken together, this Court finds that the Debtor's actions warrant the denial of his discharge.

### I.     Findings of Fact

The following facts are relevant to the Court's determination and are either undisputed or supported by the evidence presented at trial.[1] The Defendant/Debtor filed a voluntary Chapter 7 Petition on December 3, 2009. The Debtor was the President of Araujo Construction Company, Inc. ("ACC"), a concrete construction contractor. ACC was a subcontractor to Fru-Construction Corporation (the "Plaintiff") on several construction projects for which Plaintiff was the general contractor. The Debtor's brother, Jose Araujo, was the Vice President of ACC. ACC and Jose Araujo also filed voluntary Chapter 7 Petitions in this Court on December 3, 2009, Case Nos. 09-33601 and 09-33592, respectively.

The Debtor's Schedule F includes a claim held by the Plaintiff in the amount of $861,111.86. *See* Plaintiff's Exhibit 2. Plaintiff's claim arose out of litigation between the parties

---

[1] The Court notes that to the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

in the Fairfax County Circuit Court in Fairfax, Virginia.  A copy of a 13-page Letter Opinion and corresponding Order entered by the Circuit Court of Fairfax County on August 21, 2009 (the "Circuit Court Order") was admitted into evidence as Plaintiff's Exhibit 5 and 6, respectively.  The Letter Opinion reflects that a four-day bench trial was held beginning on May 4, 2009.  *See* Plaintiff's Exhibit 5.  The Circuit Court Order provides that judgment is awarded in favor of Plaintiff and against the Debtor, ACC and Jose Araujo, jointly and severally, in the amount of $570,724.29, plus interest at the legal rate from November 17, 2007.  *See* Plaintiff's Exhibit 6.  The Circuit Court Order set a hearing date of September 18, 2009, to determine the amount of attorney's fees to be awarded to Plaintiff.  *See id.*  On November 2, 2009, the Fairfax County Circuit Court entered a Consent Order, which was signed by counsel to all parties, setting forth the amount of attorneys fees awarded to the Plaintiff (the "Consent Order").  *See* Plaintiff's Exhibit 6B.  The Consent Order provides "that award is made in favor of Fru-Con Construction Corporation and against defendants Araujo Construction Corporation, Hector A. Araujo and Jose Araujo, jointly and severally, for reasonable attorneys fees and costs in the amount of $223,053.42."  *See id.*

To collect on its judgment, Plaintiff filed a Petition for Attachment in the Circuit Court for Arlington County, Virginia on September 23, 2009, and a Petition for Attachment in the Circuit Court for Fairfax County, Virginia on October 26, 2009 (together, the "Petitions of Attachment"). *See* Plaintiff's Exhibits 7 and 8.  Included in Plaintiff's Exhibit 8 is a letter dated October 16, 2009, from the Debtor, as President of ACC, to Plaintiff advising Plaintiff that ACC "intends to wind up its existing business and file Articles of Dissolution on or after twenty (20) days from the date of this correspondence."  *See* Exhibit 8-2.  Also included in Plaintiff's Exhibit 8 is a Notice to the Sheriff entered by the Clerk of the Circuit Court for Arlington County, Virginia on September 25,

2009, commanding that the Sheriff of Arlington County, Virginia attach the proceeds of a subcontract between ACC and Alberici Constructors, Inc. pertaining to work performed by ACC at the Arlington County Water Pollution Control Plant and certain equipment, tools and vehicles owned by ACC located at the Arlington County Water Pollution Control Plant.  *See* Plaintiff's Exhibit 8-4.

Debtor's sworn testimony from his Meeting of Creditors held on January 5, 2010, was admitted into evidence as Plaintiff's Exhibit 11.  During that testimony, the Debtor admitted to having two bank accounts in El Salvador that were not disclosed on his bankruptcy schedules– one account with Bank Aricola and one account with Banco Central America.  *See* Plaintiff's Exhibit 11, at 11.  The Debtor's bankruptcy schedules were filed on December 31, 2009– five days prior to his Meeting of Creditors.  Debtor's bankruptcy schedules were never amended to include the two bank accounts in El Salvador.

Debtor also testified at his Meeting of Creditors that he owns 1,500 pigs on a pig farm in El Salvadore.  *See* Plaintiff's Exhibit 11, at 2-4.  Although the pig farm was listed on Debtor's Schedule A as having a value of $272,000 (El Tempisque Village in Santa Barbara Canton), the pigs were not disclosed on Debtor's Schedule B.  *See* Plaintiff's Exhibit 2.  Debtor's Schedules A and D reflect a secured claim against the pig farm in the amount of $242,000 held by Lisandro Francisco Cruz Amaya.  *See* Plaintiff's Exhibit 2.  Debtor testified at the Meeting of Creditors that the 1,500 pigs were worth $150,000.  *See* Plaintiff's Exhibit 11, at 3.  At trial, the Debtor testified that the money received from the sale of the pigs was given directly to his farm administrator rather than deposited into the Debtor's bank account.  The Debtor testified that he did this to prevent the funds from being attached by Mr. Cruz Amaya.

Debtor also testified to owning a sugar cane farm.  Although the sugar cane farm was

disclosed on Debtor's Schedule A as having a value of $480,000, the 300 acres of sugar cane was not disclosed on Debtor's Schedule B. *See* Plaintiff's Exhibit 2. The Debtor testified at the Meeting of Creditors that the Sugar Cane Farm, including the value of the sugar cane, was $480,000. *See* Plaintiff's Exhibit 11, at 6.

The Debtor's bankruptcy schedules were never amended to separately list the pigs and sugar cane. Nevertheless, the Debtor testified at the trial that the value of the pig farm listed on his Schedule A included the value of the pigs, and that value was not significantly different from the value attributed to the pigs by Plaintiff's expert at trial. Although neither party presented expert testimony as to the value of the real property on which the pig farm operates, Plaintiff's expert witness testified that the production unit, *i.e.*, the buildings and land, would have a similar value as the inventory of pigs. Additionally, Debtor testified that the value listed on Schedule A for the sugar cane farm included the value of the sugar cane itself. Plaintiff did not offer any testimony regarding the value of the sugar cane or the acreage.

The Debtor also testified on behalf of ACC at its Meeting of Creditors on January 5, 2010. His sworn testimony from that meeting was admitted into evidence as Plaintiff's Exhibit 13. The Debtor testified that Plaintiff had a lien on ACC's payroll account. *See* Plaintiff's Exhibit 13, at 14. In contravention of Plaintiff's lien, Alberici Constructors, Inc. paid the Debtor $40,000, individually, to allow the Debtor to make ACC's payroll. *See id.* Debtor admitted that the $40,000 was paid to him rather than ACC to avoid being levied by Plaintiff. *See id.* Debtor testified at trial that the $40,000 transfer occurred in October 2009. Debtor's trial testimony regarding the $40,000 transfer is consistent with ACC's original Statement of Financial Affairs ("SOFA"), which was admitted into evidence as Defendant's Exhibit 8. Although ACC's Amended SOFA, also admitted into evidence as Defendant's Exhibit 8, omits the $40,000 payment

5

to the Debtor, the Debtor's uncontroverted testimony at trial was that this transfer took place in October 2009, two months prior to his bankruptcy filing.

## II. Amended Complaint

Count I of the Amended Complaint alleges that the Debtor transferred, removed and/or concealed property within one year before the date of the filing of his bankruptcy petition with the intent to hinder, delay, and/or defraud his creditors. Although Count I does not specify a subpart of Section 727(a), the language of Count I mirrors the language of Section 727(a)(2)(A). The specific allegations in Count I are that the Debtor concealed (1) money that is located in two bank accounts owned by him in El Salvador; (2) ownership of 15,000 hogs located on a farm in El Salvador that likely are valued in excess of $1 million; (3) ownership of 300 acres of land in El Salvador on which he grows sugar cane, likely valued in excess of $700,000 per harvest, over and above the value of the land; and (4) other assets that may be discovered including potential payments derived from a tree farm located in El Salvador and a Rolex watch. Count I also alleges that the Debtor erroneously identified his current expenditures in his Schedule J. Count II of the Amended Complaint demands payment of Plaintiff's attorneys' fees pursuant to the Consent Order in the amount of $233,053.42.[2] Count III of the Amended Complaint, which is plead as alternative relief, requests that the Court order the Chapter 7 Trustee to examine the Debtor's acts pursuant to 11 U.S.C. § 727(c)(2). Plaintiff did not pursue Count III at trial.

## III. Analysis

Due to the extreme penalty imposed by Section 727, *i.e.,* the denial of discharge, objections to discharge are construed strictly against the objecting party and liberally in favor of

---

[2] The Court notes that the Consent Order awarded Plaintiff $223,053.42 for attorneys' fees and costs.

the debtor. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996). The party objecting to a debtor's discharge bears the burden of proving its objection by a preponderance of the evidence. *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249-250 (4th Cir. 1994). "Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor." *Id.* "A party objecting to discharge need prove only one of the grounds for non-dischargeability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive." *Id.* at 250.

**A.    11 U.S.C. § 727(a)(2)(A)**

Section 727(a)(2)(A) provides, in relevant part:
> (a) The court shall grant the debtor a discharge, unless--
>
>   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
>     (A) property of the debtor, within one year before the date of the filing of the petition....

11 U.S.C. § 727(a)(2)(A). To bar a debtor's discharge under Section 727(a)(2)(A), the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) the debtor transferred, removed, destroyed, mutilated or concealed, (2) his or her property, (3) within one year of the bankruptcy petition's filing, (4) with the actual intent to hinder, delay, or defraud a creditor. *Id.; see also Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 780 (Bankr. D. Del. 2002) . Because the fourth element is worded in the disjunctive, it is not necessary to prove fraudulent intent in order to deny a discharge. *Consumers United Capital Corp. v. Greene (In re Greene),* 202 B.R. 68, 73 (Bankr. D. Md. 1996). The fact that a debtor's "motivation for making

the transfer was at least in part to fulfill his obligation to other creditors in order to save his business is not a valid defense." *Id.*

Applying this standard to the facts of this case, the Court finds that the Debtor transferred assets with the actual intent to hinder and delay a creditor. Specifically, the Debtor testified at trial that he owns a pig farm in El Salvador and that the money received from the sale of the pigs was given directly to his farm administrator rather than deposited into the Debtor's bank account. The Debtor testified that he did this to prevent the funds from being attached by Lisandro Francisco Cruz Amaya, a secured creditor of the Debtor. Although the Debtor testified that he needed the money to pay for food for the pigs, he was clear that he directed the cash proceeds from the sale of his pigs into the farm administrator's account to avoid being attached by Mr. Cruz Amaya. At trial, the Debtor gave an additional explanation for not using the pig farm's bank account. He testified that some of his suppliers do not accept checks from that account because checks have bounced in the past. The inability to issue checks to some suppliers does not justify the Debtor's failure to deposit funds into his bank accounts given the Debtor's explanation that he diverted the cash proceeds generated by his pig farm into his employee's account to put the funds beyond the reach of another creditor. Debtor could have deposited the funds and then paid cash or certified funds to creditors who would not accept his personal checks. Moreover, while Debtor's motivation for diverting the funds is compelling, *i.e.*, to feed his pigs, the *Greene* decision makes clear that a debtor cannot avoid attachment by one creditor to fulfill other business obligations. *In re Greene,* 202 B.R. at 73. Relying on the Ninth Circuit decision *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir. 1986), the *Greene* Court reiterated that the inquiry under Section 727(a)(2)(A) is whether the debtor intended to hinder or delay a creditor. *Id.* at 73. If so, then the debtor had the requisite intent under Section 727(a)(2)(A) notwithstanding any other

motivation he may have had for the transfer. *Id. (citing In re Adeeb*, 787 F.2d at 1343). The *Greene* Court stated that "Debtor was attempting to rob Peter to pay Paul" and concluded that "[s]uch conduct is prohibited by the Bankruptcy Code, and constitutes grounds for the denial of Debtor's discharge." *Id.* This is precisely the situation presented in this case and warrants the denial of Debtor's discharge.

**B.      11 U.S.C. § 727(a)(7)**

At the close of trial, Plaintiff argued that the Debtor should be denied a discharge pursuant to Section 727(a)(7), which provides that the court shall grant the debtor a discharge unless--

> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider....

11 U.S.C. § 727(a)(7). Specifically, Plaintiff argued that Debtor should be denied a discharge under Section 727(a)(7) based on the $40,000.00 payment due ACC from Alberici Constructors, Inc., but paid directly to the Debtor to shield it from Plaintiff's attachment.

Although the Amended Complaint did not assert a cause of action under Section 727(a)(7), Fed. R. Civ. P. 15(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015, sets forth the circumstances and procedures by which a pleading may be amended during and after trial. "Rule 15(b) applies under two distinct circumstances: 'when an issue not contained in the pleadings is tried by consent (express or implied) of the parties, or when a party objects to evidence as outside the pleadings and the court exercises its discretionary right to allow amendment.'" *Nickless v. Conley (In re Byers),* 304 B.R. 1, 7 (B.A.P. 1st Cir. 2004)(*quoting Invest Almaz v. Temple–Inland Forest Products Corp.,* 243 F.3d 57, 71 n. 19 (1st Cir.2001)). "The Bankruptcy Rules allow the Court, *sua sponte*, to permit pleadings to be

9

amended to conform to the proof when the issues are tried by the implied consent of the parties and no objection is raised to the introduction of evidence of the unpleaded facts." *Smith v. Cooper (In re Cooper)*, 399 B.R. 637, 645 (Bankr. E.D. Ark. 2009). "'Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue.'" *In re Byers,* 304 B.R. at 7 *(quoting DCPB, Inc. v. City of Lebanon,* 957 F.2d 913, 917 (1st Cir.1992)). "Trial by implied consent turns on: whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 332 (5th Cir. 1994). The purpose of Rule 15(b) is to "base the outcome on the trial, not the pleadings." *Id.* at n. 17 (*citing Flannery v. Carroll*, 676 F.2d. 126, 131 (5th Cir. 1982)).

In this case, the Court finds that the issue of the $40,000 payment from Alberici Constructors, Inc. to the Debtor was tried by the implied consent of the parties. Debtor's counsel cross-examined Michael Fischer, Plaintiff's Vice-President, regarding the timing of the payment and also questioned the Defendant about the payment on direct examination. Moreover, the only exhibit admitted into evidence by the Defendant was ACC's Schedules, SOFA and Amended SOFA. *See* Defendant's Exhibit 8. Defendant's counsel moved these documents into evidence as proof that the $40,000 payment was made more than a year prior to the filing of Debtor's

bankruptcy petition.[3]  Defendant's counsel addressed the $40,000 payment in his opening statement asserting that he would establish that the $40,000 payment was made more than one year prior to the bankruptcy filing.  Finally, Defendant's counsel argued in his closing argument that "if the Court is inclined to allow the plaintiff to move under Section 727(a)(7), that transfer, Your Honor, occurred more than one year prior to the filing of this petition...."  Counsel then referred to the absence of the $40,000 payment from ACC's Amended SOFA.  Clearly, this issue was tried by the implied consent of the parties.  There was no surprise nor prejudice to the Defendant in litigating the issue at trial.  The Defendant knew before trial that the $40,000 payment was at issue.  Not only did the Defendant acquiesce in the introduction of evidence by the Plaintiff that was relevant only to the issue of the $40,000 payment (Plaintiff's Exhibit 13), the Defendant also introduced evidence that related only to that issue, questioned two witnesses as to the diversion of the $40,000 payment, and addressed the issue in his opening and closing arguments.  *See Portis*, 34 F.3d at 332.  Accordingly, the Court will exercise its discretion to amend the Amended Complaint pursuant to Fed. R. Civ. P. 15(b) to conform it to what was actually litigated by the parties at trial.  *See In re Byers,* 304 B.R. at 7; *In re Cooper*, 399 B.R. at 645.

Plaintiff argued that the Debtor's actions with respect to the $40,000 payment amounts to concealment and was done with the intent to hinder, delay, or defraud Plaintiff, which is an act specified in Section 727(a)(2).  *See* discussion *supra* Part III-A.  The Debtor testified at trial that

---

[3] Question 3c of ACC's SOFA and Amended SOFA asks ACC to disclose all payments made within one year immediately preceding the commencement of its bankruptcy case to or for the benefit of creditors who are or were insiders. As previously stated, ACC's original SOFA discloses a payment to the Debtor in the amount of $40,000 on October 14, 2009.  This payment is not included in response to Question 3c on ACC's Amended SOFA, which was filed on March 15, 2010, one week after the commencement of this adversary proceeding.

he received the $40,000 payment from Alberici Constructors, Inc. in October 2009, less than one year prior to his bankruptcy filing.  The Defendant argued that ACC's Amended SOFA, which was admitted *by the Defendant* into evidence as Defendant's Exhibit 8, does not include this $40,000 payment to the Debtor because the payment was made more than a year prior to the bankruptcy filing.  Despite this argument, the Debtor's testimony was clear—he testified that he received the payment in October 2009.  Not only was Debtor's testimony clear, it is also consistent with the timeline of events surrounding the Circuit Court Order awarding judgment in favor of Plaintiff.  The Circuit Court Order was entered on August 21, 2009.  On September 23, 2009, Plaintiff filed a Petition for Attachment in the Circuit Court for Arlington County, Virginia.  On September 25, 2009, the Clerk of the Circuit Court for Arlington County, Virginia entered a Notice to the Sheriff commanding that the Sheriff of Arlington County, Virginia attach the proceeds of the subcontract between ACC and Alberici Constructors, Inc. (the "Notice to Sheriff").  Debtor's trial testimony was that the $40,000 payment was made in October 2009.  This would have been soon after the Notice to Sheriff was issued.  Debtor's trial testimony was also consistent with his testimony at ACC's Meeting of Creditors, which was admitted into evidence as Plaintiff's Exhibit 13.  During ACC's Meeting of Creditors, the Debtor was questioned about the transfers listed in response to Question 3c on ACC's SOFA, including the $40,000 payment from ACC to the Debtor.  The Defendant testified:

> That check was in my name because do you remember you put a lien on the account and they transfer it to me and I have to pay payroll, I have to meet the payroll and I deposited it in the account and it would make and we meet the payroll in my own account.

*See* Plaintiff's Exhibit 13, at 14.  Defendant further stated that the lien was on "[m]y Araujo account from you people."  *Id.*  When asked what account, Debtor answered: "[t]he bank account. Payroll account."  *Id.*  Defendant's counsel then clarified, on the record at the meeting

12

of creditors, that the $40,000 "was a payment from Alberici for work performed." *Id.* Defendant's Counsel further stated: "[t]he account was levied so it went to Mr. Araujo's personal account to make payroll." *Id.* Defendant's Amended SOFA does not prove, by omission, when the payment was made. Rather, Defendant's testimony at the Meeting of Creditors and at trial is evidence, by admission, that the payment was made in October 2009.

The evidence clearly establishes that the Debtor transferred property belonging to ACC with the intent to avoid attachment by the Plaintiff and that such transfer took place within one year prior to his bankruptcy filing. As a result of the Debtor's intentional act to hinder and delay the Plaintiff in connection with ACC's bankruptcy case, the Debtor shall be denied a discharge pursuant to 11 U.S.C. § 727(a)(7).

**C.    11 U.S.C. § 727(a)(4)**

The final statutory basis relied on by the Plaintiff at trial is Section 727(a)(4). Section 727(a)(4) provides: "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Similar to Plaintiff's reliance on Section 727(a)(7), Plaintiff failed to plead this cause of action in the Amended Complaint. Again however, the Court finds that this issue was tried by the implied consent of the parties at trial. Plaintiff argued at trial that Defendant should be denied a discharge pursuant to Section 727(a)(4) based on his failure to list several assets on his bankruptcy schedules. Defendant's bankruptcy schedules were admitted into evidence as Plaintiff's Exhibit 2 without objection by the Defendant. Similarly, Defendant's sworn testimony from his Meeting of Creditors at which he testified regarding the omitted assets, was admitted into evidence as Plaintiff's Exhibit 11 without objection by the Defendant. Moreover, Defendant's counsel questioned the Defendant regarding the undisclosed assets, addressed the

727(a)(4) allegation in his closing argument, and cited case law at trial that a debtor who comes forward on his own accord to correct an omission in his schedules constitutes strong evidence that there was no fraudulent intent in the omission. Under these circumstances, the Court finds that the Amended Complaint shall be amended to include a cause of action under Section 727(a)(4). Nevertheless, for the following reasons, the Court finds that the Plaintiff failed to meet its burden under Section 727(a)(4).

As noted above, Section 727(a)(4)(A) necessitates a showing that the false oath was made "knowingly and fraudulently." 11 U.S.C. § 727(a)(4)(A); *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 483-4 (E.D. Va. 1997). "'Once it reasonably appears that the oath is false, [however,] the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.'" *Id.* at 482 (*quoting In re Johnson*, 139 B.R. 163, 166 (Bankr. E.D. Va. 1992)). "As courts have noted, the 'problems inherent in ascertaining whether a debtor has acted with fraudulent intent are obvious,' because the debtor is the only person likely to testify and he is unlikely to admit that he acted with fraudulent intent." *Id.* at 483-484 (*quoting Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987)). Consequently, fraudulent intent may be established in one of two ways: first, it may be established by circumstantial evidence, or by inference drawn from a course of conduct. *Id*. (*citing Williamson,* 828 F.2d at 252). "Thus a 'pattern of concealment and nondisclosure' would permit an inference of the requisite intent." *Id. (citing In re Ingle,* 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987)). Second, "courts have determined that a 'reckless indifference to the truth' constitutes the 'functional equivalent of fraud.'" *Id. (citing Johnson,* 139 B.R. at 166). Where a debtor subsequently discloses omitted assets, such later disclosure does not expunge a prior false oath. *Rosenbaum v. Kilson (Matter of Kilson)*, 83 B.R. 198, 203 (Bankr. D. Conn. 1988).

14

Nevertheless, courts have held that a debtor's disclosure of previously omitted information is "some evidence of innocent intent." *Id; see also Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997)(where the United States Court of Appeals for the Tenth Circuit held that although the debtor should have amended his bankruptcy schedules to reflect omitted assets, "no inference of fraudulent intent can be drawn from an omission when *the debtor promptly brings it to the court's or trustee's attention absent other evidence of fraud*.").

In this case, it is undisputed that the Debtor failed to list the two El Salvadorian bank accounts on his schedules and failed to separately list the pigs and sugar cane on his Schedule B. However, the Debtor voluntarily revealed these assets at his Meeting of Creditors, held only five days after his schedules were filed. While the Debtor should have filed amended schedules to include these omitted assets, the Court does not find fraudulent intent because the Debtor promptly brought the omissions to the Trustee's attention at the Meeting of Creditors. *See In re Brown*, 108 F.3d at 1294. Moreover, the Debtor testified that the real property valuations provided on Schedule A included the value of the pigs and sugar cane. Although the Plaintiff offered expert testimony regarding the value of the pigs, the expert's valuation was not significantly different than the cumulative value provided on Debtor's Schedule A. As for the value of the sugar cane harvest, Plaintiff did not provide any expert testimony as to its value. Lastly, no appraisals of the real property were admitted into evidence to refute the Debtor's valuations. Plaintiff simply did not meet its burden under Section 727(a)(4).

### IV.    Conclusion

For these reasons, the Court finds that the Debtor shall be denied his discharge pursuant to 11 U.S.C. § 727(a)(2)(A) for his actions in concealing and transferring the funds generated from the pig farm. Because Plaintiff need only prove one of the grounds set forth in Section

15

727(a), the Court need not base its decision on the other subsections of 727 litigated by the parties at trial. Nevertheless, the Court finds an additional basis to deny Debtor's discharge exists under Section 727(a)(7) for the Debtor's transfer of the $40,000 payment due to ACC from Alberici Constructors, Inc. A separate order will issue.


cc: All Parties
    All Counsel
    Chapter 7 Trustee
    United States Trustee

**END OF MEMORANDUM**